## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **PATRICK BROWN,** | : | **CIVIL ACTION NO. 1:11-CV-0638** |
| | : | |
| **Plaintiff,** | : | **(Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **FRANCIS CHARDO,** | : | |
| | : | |
| **Defendant** | : | |

## <u>MEMORANDUM</u>

This is a civil rights action filed by Patrick Brown ("Brown") against Francis Chardo ("Chardo").  Brown alleges that Chardo, a Dauphin County Assistant District Attorney, violated his Fourth, Sixth and Fourteenth Amendment rights under the United States Constitution and his rights under the Pennsylvania Constitution and Pennsylvania tort law by failing to disclose the results of a DNA report during Brown's post conviction relief proceedings on a burglary conviction. Presently before the court is the motion (Doc. 10) to dismiss filed by Chardo.  For the reasons that follow, the court will grant the motion in part and deny it in part.

I.    **Background**[1]

In 2001, plaintiff Patrick Brown was convicted in the Court of Common Pleas

of Dauphin County of burglary, criminal conspiracy, robbery and persons not to

possess firearms. (Doc. 1 ¶ 6). The court sentenced Brown to 22 to 70 years

incarceration. (Id.) The case, prosecuted by Assistant District Attorney Chardo,

rested solely upon the eyewitness account of the victim, who identified Brown as

one of two burglars and the suspect who wore the blue bandana. (Id. ¶ 7). At the

time of trial the jury knew that the DNA recovered from the blue bandana and a

glove left at the scene of the crime did not match Brown. (Id. ¶ 8). In fact, no

forensic evidence linked Brown to the crime. (Id. ¶ 9). Brown's fingerprints were

not on any of the guns, and fingerprints and footprints at the scene were too

smudged or insufficiently clear to produce impressions for comparison. (Id.)

Moreover, the second suspect was never identified. (Id. ¶ 10). Brown appealed his

conviction, but his appeals were denied. (Id. ¶ 11).

In 2006, Brown filed a *pro se* Post Conviction Relief Act ("PCRA") Petition.

(Id. ¶ 24). Chardo represented the Commonwealth in those proceedings. (Id.) In

early June 2006, Chardo received a preliminary DNA analysis report implicating an

_____

[1]   In accordance with the standard of review for a motion to dismiss
pursuant to Rule 12(b)(6), the court will present the facts as alleged in the
complaint. See infra Part II. However, those portions of the complaint which
consist of no more than legal conclusions or a formulaic recitation of the elements
of a cause of action have been disregarded. Ashcroft v. Iqbal, 556 U.S. 662, 129 S.
Ct. 1937, 1949 (2009); Santiago v. Warminster Twp., 629 F.3d 121, 130-31 (3d Cir.
2010).

individual, R.R., in the burglary/robbery for which Brown was convicted.  (Id. ¶¶ 17, 20).  The report indicated that the DNA on the blue bandana matched R.R. and that R.R. could not be excluded as a contributor to the DNA on the glove.  (Id. ¶ 19). Chardo claims that he mailed a copy of the DNA report to Brown, but Brown contends that he never received it and had no knowledge of its existence.  (Id. ¶¶ 18, 23).  When Chardo received the DNA report in June of 2006, he sent a detective to interview R.R., who was incarcerated at the time.  (Id. ¶ 20).  The detective produced an investigative report, which was not provided to Brown.  (Id. ¶ 21).

According to the complaint, Chardo failed to advise the PCRA court of the DNA evidence implicating R.R.  (Id. ¶ 25).  In addition, Brown allegedly encountered Chardo at the courthouse approximately two months after Chardo had received the DNA report.  (Id. ¶ 26).  Brown reasserted his innocence to Chardo and inquired on the status of his case.  (Id.)  Chardo purportedly responded that the case was closed.  (Id. ¶ 26).

During the pendency of Brown's PCRA petition, Brown had an altercation with two correctional officers.  (Id. ¶ 28).  As a result, Chardo charged Brown with two counts of aggravated assault.  (Id. ¶ 29).  One of the officers supposedly informed Brown that he was pressing charges against Brown because Chardo encouraged it.  (Id. ¶ 28).  Brown contends that Chardo induced him to plead guilty to the aggravated assault charges by suggesting a strong likelihood of a significant sentence because Brown was a convicted felon.  (Id. ¶ 31).  On August 16, 2006,

3

Brown pled guilty and was sentenced to 36 to 120 months imprisonment, to run concurrently with his burglary/robbery sentence.  (Id. ¶ 32).

In the summer of 2009, while incarcerated at SCI Fayette, an inmate informed Brown that he overheard a conversation in the prison yard between "Dutt" and another unidentified prisoner.  (Id. ¶ 12).  "Dutt" purportedly informed the unidentified prisoner about a 2007 conversation between "Dutt" and another inmate named "Trizz."  (Id. ¶ 13).  During this conversation between "Dutt" and "Trizz," "Trizz" allegedly stated that he and an individual named "Scar" robbed and assaulted an individual named "Conehead" and that someone else was convicted of the crime.  (Id.)  "Trizz" told "Dutt" that as he and "Scar" exited the residence, "Conehead" fired at them, and that in the course of his retreat, "Trizz" dropped his blue bandana and a glove.  (Id.)

Counsel for Brown investigated the story, obtained a sworn statement from "Dutt" attesting to "Trizz's" confession and identified "Trizz" as R.R.  (Id. ¶ 14).  Counsel discovered that R.R. lived near the victim, had numerous drug and gun convictions, and was not incarcerated at the time of the crime for which Brown was convicted.  (Id.)  Thereafter, counsel for Brown filed a PCRA petition pursuant to 42 PA CONS. STAT. § 9545(b)(1)(ii), alleging new exculpatory evidence.  (Id. ¶ 15).  Brown also sought DNA testing of R.R., the newly identified suspect.  (Id. ¶ 16).  Chardo, who prosecuted Brown in 2001 for the burglary and represented the Commonwealth in Brown's first PCRA petition, also represented the Commonwealth in the newly filed petition.  (Id. ¶¶ 6, 15, 24).

4

On April 9, 2010, Chardo advised Brown's counsel that he submitted a CODIS[2] request for R.R.'s profile and received from the laboratory a copy of the June 8, 2006, preliminary DNA analysis report.  (Id. ¶ 17).  Chardo subsequently claimed that he forgot that he received the DNA report in June of 2006 and had previously dispatched a detective to interview R.R.  (Id. ¶ 20).[3]  Chardo also asserted that he mailed a copy of the DNA report to Brown in 2006.  (Id. ¶ 23).

After receipt of the DNA evidence, Brown filed an amended PCRA petition. (Id. at 35).  Chardo was unable to put forth any physical evidence that he mailed the DNA report to Brown.  Consequently, the Commonwealth stipulated to the timeliness of the newly discovered DNA evidence at the PCRA hearing.  (Id. ¶ 23). The PCRA court held a hearing in June of 2010, during which it received the DNA evidence, as well as confirmation from the Department of Corrections that the conversation between "Dutt" and "Trizz" could have occurred when and where the witness reported it to have happened.  (Id. ¶ 36).  Chardo then agreed that Brown was entitled to a new trial and moved to *nolle pros* the charges.  (Id.)  The Honorable Lawrence Clark of the Court of Common Pleas for Dauphin County entered an order vacating the conviction and *nolle prossing* the charges.  (Id. ¶ 37). However, Brown remained incarcerated on the 2006 assault conviction.  (Id. ¶ 40).

---

[2]  CODIS stands for Combined DNA Index System.

[3]  Brown asserts that he did not receive the detective's investigative report until April 9, 2010.  (Id. ¶ 21).

Brown subsequently filed a *pro se* PCRA petition alleging that the DNA evidence was newly discovered evidence with respect to his guilty plea on the 2006 aggravated assault charge, and that his plea was not knowing and voluntary. (Id. ¶ 38). The PCRA court has issued a notice of intent to dismiss the petition as untimely or otherwise procedurally defaulted. (Id. ¶ 39).

On April 6, 2011, Brown filed the instant civil rights action. (Doc. 1). In Count I, Brown asserts a claim of false imprisonment under the Fourth and Fourteenth Amendments of the U.S. Constitution, the Pennsylvania Constitution, and Pennsylvania tort law. (Id. ¶¶ 46-51). In Count II, Brown asserts a malicious abuse of process claim under the U.S. and Pennsylvania Constitutions and Pennsylvania tort law. (Id. ¶¶ 52-56). Finally, in Count III, Brown asserts a claim for intentional infliction of emotional distress under Pennsylvania law. (Id. ¶¶ 57-60). Brown avers that as a result of Chardo's conduct, Brown has been denied the comfort and companionship of his family and has been forced to endure the hardships of prison life. (Id. ¶¶ 41, 42). Brown claims that as a further result of Chardo's conduct he suffers from severe emotional distress, depression, paranoia, suicidal ideation, nightmares, anxiety, and socialization and communication problems, as well as the physical injuries of weight loss, headaches, chest pains, diminished hearing and vision, rashes and insomnia. (Id. ¶¶ 43, 44). Brown seeks compensatory and punitive damages, plus attorney's fees on all counts.

On June 13, 2011, Chardo filed a motion to dismiss the complaint. (Doc. 10). Chardo contends that Brown's claims against him are barred by absolute

prosecutorial immunity.  (Id. ¶ 21).  Chardo also asserts that Brown's challenge to

the lawfulness of his guilty plea on the aggravated assault charges are barred by

Heck v. Humphrey, 512 U.S. 447 (1994).  (Id. ¶ 22).  Alternatively, Chardo argues

that Brown fails to state a cognizable malicious abuse of process claim, and fails to

assert any cognizable claim for monetary damages under the Pennsylvania

Constitution.  (Id. ¶¶ 23, 24).  Finally, Chardo asserts that Brown's state law claims

are barred by the application of immunity afforded to high public officials under

Pennsylvania law.  (Id. ¶ 25).   Brown filed an opposition brief on June 13, 2011,

(Doc. 13) and Chardo filed a reply on June 27, 2011.  (Doc. 16).  The motion has been

fully briefed and is ripe for disposition.

## II.    **Standard of Review**

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the

dismissal of complaints that fail to state a claim upon which relief can be granted.

FED. R. CIV. P. 12(b)(6).  When ruling on a motion to dismiss under Rule 12(b)(6), the

court must "accept all factual allegations as true, construe the complaint in the light

most favorable to the plaintiff, and determine whether, under any reasonable

reading of the complaint, the plaintiff may be entitled to relief." Gelman v. State

Farm Mut. Auto. Ins. Co., 583 F.3d 187, 190 (3d Cir. 2009) (quoting Phillips v. County

of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008)); see also Kanter v. Barella, 489 F.3d

170, 177 (3d Cir. 2007) (quoting Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005)).

Although the court is generally limited in its review to the facts contained in the

complaint, it "may also consider matters of public record, orders, exhibits attached

to the complaint and items appearing in the record of the case." Oshiver v. Levin,

Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994); see also In re

Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).

Federal notice and pleading rules require the complaint to provide "the

defendant notice of what the . . . claim is and the grounds upon which it rests."

Phillips, 515 F.3d at 232 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555

(2007)).  To test the sufficiency of the complaint in the face of a Rule 12(b)(6) motion,

the court must conduct a three-step inquiry.  See Santiago v. Warminster Twp., 629

F.3d 121, 130-31 (3d Cir. 2010).  In the first step, "the court must 'tak[e] note of the

elements a plaintiff must plead to state a claim.'"  Id. (quoting Ashcroft v. Iqbal, 556

U.S. 662, 129 S. Ct. 1937, 1947 (2009)).  Next, the factual and legal elements of a

claim should be separated; well-pleaded facts must be accepted as true, while mere

legal conclusions may be disregarded.  Id.; see also Fowler v. UPMC Shadyside, 578

F.3d 203, 210-11 (3d Cir. 2009).  Once the well-pleaded factual allegations have been

isolated, the court must determine whether they are sufficient to show a "plausible

claim for relief."  Ashcroft v. Iqbal, 556U.S. 662, 129 S. Ct. at 1950 (citing Twombly,

550 U.S. at 556); Twombly, 550 U.S. at 555 (requiring plaintiffs to allege facts

sufficient to "raise a right to relief above the speculative level").  A claim "has facial

plausibility when the plaintiff pleads factual content that allows the court to draw

the reasonable inference that the defendant is liable for the misconduct alleged."

Iqbal, 556 U.S. 662, 129 S. Ct. at 1949.  When the complaint fails to present a *prima*

*facie* case of liability, however, courts should generally grant leave to amend before

8

dismissing a complaint.  See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000).

## III.   Discussion

### A.   Prosecutorial Immunity

The court begins its analysis with Chardo's assertion of absolute prosecutorial immunity.  "A prosecutor bears the 'heavy burden' of establishing entitlement to absolute immunity." Odd v. Malone, 538 F.3d 202, 207 (3d Cir. 2008) (citing Light v. Haws, 472 F.3d 74, 80-81 (3d Cir. 2007) (quoting Forsyth v. Kleindienst, 599 F.2d 1203, 1212 (3d Cir. 1979))); see also Burns v. Reed, 500 U.S. 478, 486 (1991).  Indeed, the Third Circuit instructs the court to start with the presumption that qualified, not absolute, immunity is appropriate. Odd, 538 F.3d at 207-08.

The defendant's status as a prosecutor does not in and of itself entitle him to prosecutorial immunity.  The court must focus upon the nature of the function performed by the prosecutor, not the identity of the actor.  See Kalina v. Fletcher, 522 U.S. 118, 127 (1997).  A prosecutor is entitled to absolute immunity when he is functioning as the state's advocate in performing the questioned actions. Yarris v. County of Delaware, 465 F.3d 129, 136 (3d Cir. 2006).  That is, prosecutors are absolutely immune for actions performed in a judicial or quasi-judicial role. Odd, 538 F.3d at 208; Yarris, 465 F.3d at 135;  Imbler v. Pachtman, 424 U.S. 409, 430-31 (1976).  Prosecutorial immunity extends to "acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in

the course of his role as an advocate for the State." Buckley v. Fitzsimmons, 509

U.S. 259, 273 (1993).  Allegations that the prosecutor acted willfully or in bad faith,

knowing his conduct to be unauthorized, will not strip the prosecutor of absolute

immunity unless a reasonable prosecutor would recognize the conduct as 'clearly

outside his jurisdiction' in representing the state.  See Ernst v. Child and Youth

Servs. Of Chester Cnty., 108 F.3d 486, 502 (3d Cir. 1997) (subjective state of mind

irrelevant to absolute immunity and allegations of bad faith will not strip a

prosecutor of absolute immunity) (quoting Bauers v. Heisel, 361 F.2d 581, 591 (3d

Cir. 1966)); Imbler, 424 U.S. at 427 (admitting that prosecutorial immunity leaves

wronged defendant without civil remedy for a prosecutor's "malicious and

dishonest" acts).

Absolute immunity, however, does not cover administrative duties or

investigatory functions of the prosecutor not related to initiating or conducting

judicial proceedings.  See Odd, 538 F.3d at 208.  When the behavior of the

prosecutor 'falls completely outside the prosecutorial role,' for example, a

prosecutor's deliberate destruction of exculpatory evidence, absolute immunity is

unavailable.  Giuffre v. Bissell, 31 F.3d 1241, 1251 (3d Cir. 1994) (quoting Kulwicki v.

Dawson, 969 F.2d 1454, 1463 (3d Cir. 1992)); Odd, 538 F.3d at 211; Yarris, 465 F.3d at

137 (finding prosecutors absolutely immune for withholding exculpatory evidence

but not absolutely immune for the deliberate destruction of exculpatory evidence,

and stating that "while deciding not to furnish the prosecution's evidence to the

defense may be an act of advocacy, throwing the evidence away is not such an act"
(internal citations and quotations omitted)).

Thus, the court's task in determining whether Chardo is entitled to absolute
immunity is twofold: first, the court must determine exactly what conduct forms the
basis of Brown's cause of action against Chardo, and thereafter the court must
determine what function Chardo's conduct served, i.e. prosecutorial, advocative,
investigative, or administrative. Schneyder v. Smith, 653 F.3d 313, 332 (3d Cir.
2011). If the conduct was advocative or prosecutorial, Chardo is entitled to absolute
immunity. If the act was administrative or investigative, Chardo's conduct will not
be cloaked in absolute immunity. The prosecutorial immunity inquiry is principally
fact-based and there are no bright line rules for when absolute immunity applies.
See Odd, 538 F.3d at 210 ("Following the Supreme Court's guidance, our
prosecutorial immunity analysis focuses on the unique facts of each case and
requires careful dissection of the prosecutor's actions.").

### 1.   The Conduct

The act giving rise to the instant litigation is Chardo's purported withholding
of the 2006 preliminary DNA analysis report from both Brown and the PCRA court.
According to the complaint, in June of 2006, Brown's *pro se* PCRA petition was
pending before the court, when Chardo received a laboratory report identifying
R.R. as the source of DNA on the bandana worn by one of the burglars. Upon
reviewing the DNA report, Chardo sent a detective to interview R.R., which
occurred on July 19, 2006, and resulted in an investigative report. The DNA report

11

itself was not inconsistent with the jury's finding of guilt against Brown. The jury knew that the DNA on the blue bandana did not match Brown, and convicted him nonetheless on the strength of the eyewitness testimony of the victim. Chardo purportedly did not provide the DNA report to Brown and made no mention of it to the PCRA court or during plea negotiations on Brown's 2006 assault charges.

## 2.   **The Function of the Conduct**

The complaint states that Chardo received the DNA report in 2006 while representing the Commonwealth in Brown's pending PCRA petition. Thus, Chardo argues that his conduct of purportedly withholding the report occurred within the scope of his advocative role in representing the Commonwealth in adversarial proceedings. Brown contends however that Chardo's conduct was investigatory and not entitled to absolute immunity. (Doc. 13, at 8).

According to the Third Circuit, "[i]t is well settled that prosecutors are entitled to absolute immunity from claims based on their failure to disclose exculpatory evidence, so long as they did so while functioning in their prosecutorial capacity." Yarris, 465 F.3d at 137; see also Imbler v. Pachtman, 424 U.S. 409, 431 n.34 (explaining that the "deliberate withholding of exculpatory information" is included within the "legitimate exercise of prosecutorial discretion"); Smith v. Holtz, 210 F.3d 186, 199 n. 18 (3d Cir. 2000) (prosecutor who made decision to withhold exculpatory evidence has absolute immunity in § 1983 action so long as decision made while functioning in his prosecutorial capacity); Douris v. Schweiker, 229 F. Supp. 2d 391, 411 (E.D. Pa. 2002) (stating that "withholding exculpatory

evidence is a quasi-judicial act protected by absolute immunity"). This includes withholding evidence post-trial and on appeal. <u>Yarris</u>, 465 F.3d at 137.

In response to this well settled law, Brown notes that the cases granting absolute prosecutorial immunity involve trial conduct or conduct of the prosecutor during <u>direct</u> appeals. Brown contends that because Chardo's act of withholding the DNA report from him and the PCRA court occurred during collateral proceedings, and not during trial or during post conviction appeals, Chardo's conduct is not protected by absolute immunity. (Doc. 13, at 9). The court cannot agree. Neither the Supreme Court nor the Third Circuit has ever drawn a clear distinction between direct appeals and collateral proceedings in the analysis of prosecutorial immunity. To the contrary, the Third Circuit has squarely held that certain pre-indictment and post trial actions are properly characterized as advocative, sufficient to trigger absolute prosecutorial immunity. <u>See</u> <u>Odd</u>, 538 F.3d at 211 n.3; <u>Yarris</u>, 465 F.3d at 137 (stating agreement with other courts of appeal that '[a]bsolute immunity applies to the adversarial acts of prosecutors during post-conviction proceedings . . . where the prosecutor is personally involved . . . and continues his role as an advocate,' but that 'where the role as advocate has not yet begun . . . or where it has concluded, absolute immunity does not apply' (internal citations and quotations omitted)). In <u>Yarris</u>, the Third Circuit opined

> After a conviction is obtained, the challenged action must be shown by the prosecutor to be part of the prosecutor's continuing personal involvement as the state's advocate in adversarial post-conviction proceedings to be encompassed within that prosecutor's absolute immunity from suit.

13

<u>Yarris</u>, 465 F.3d at 137.

In the instant matter, it is undisputed that Chardo continued as the Commonwealth's advocate in the PCRA proceedings.  See <u>Odd</u>, 538 F.3d at 210 (stating that timing and location of prosecutor's action are not dispositive but are relevant "to the extent they bear upon the nature of the function the prosecutor is performing").  Thus, absolute immunity properly applies to Chardo's prosecutorial functions and all of his conduct associated with defending the Commonwealth's position in Brown's PCRA proceedings.  See <u>Washam v. Stesis</u>, 321 Fed. App'x 104, 106 & n.1 (3d Cir. 2009) (affirming dismissal of § 1983 action against prosecutor on basis that prosecutor had absolute immunity for performance of typical prosecutorial functions and activities, and noting that prosecutor named as defendant represented Commonwealth in plaintiff's PCRA proceedings); <u>see also</u> <u>Wallace v. Green</u>, Civ. A. No. 08-CV-3239, 2010 WL 1303446, at *6 (E.D. Pa. Mar. 31, 2010) (granting summary judgment on grounds of prosecutorial immunity to prosecutor who opposed, on behalf of the Commonwealth, plaintiff's PCRA petition).  PCRA proceedings are adversarial and Chardo's conduct is shielded by absolute immunity to the extent it falls within the ambit of his prosecutorial or advocative functions.

In the instant matter, there is simply insufficient information at this stage to determine whether Chardo's conduct was prosecutorial, advocative, investigative or administrative.  At the motion to dismiss stage, the court may look only to the complaint and documents attached to the complaint as well as matters of public

record.  See Oshiver, 38 F.3d at 1384 n.2; see also In re Burlington Coat Factory Sec.

Litig., 114 F.3d at 1426.  The fact that Brown's PCRA petition was pending at the

time Chardo received the DNA report does not in and of itself establish that

Chardo's conduct was advocative or prosecutorial.  That fact, however, coupled

with the fact that Chardo sent an investigator to interview R.R. after receiving the

DNA report, are the only facts (as alleged by the complaint) that the court has at

this stage regarding the nature and circumstances of Chardo's conduct.

The burden is on Chardo to establish his entitlement to absolute immunity.

See Odd, 538 F.3d at 207.  Chardo cannot meet that burden based solely on the

averments in the complaint.  Therefore, the motion to dismiss on grounds of

absolute prosecutorial immunity is denied.  The defense may be reasserted on a full

summary judgment record from which the court can adequately assess the facts

and circumstances surrounding Chardo's purported conduct.

### B.  The *Heck v. Humphrey* Bar

Chardo next argues that Brown's claim challenging the lawfulness of his

guilty plea to the 2006 aggravated assault charges is barred by the United States

Supreme Court's decision in Heck v. Humphrey, 512 U.S. 477 (1994), because

Brown's sentence has not been reversed or otherwise declared invalid.  Brown

counters that he is not seeking to challenge the validity of or overturn the

conviction.  He argues that his claims of false imprisonment, malicious abuse of

process and intentional infliction of emotional distress, if successful, would not

imply the invalidity of his 2006 conviction, and are therefore not barred by Heck.

15

In <u>Heck</u>, the Supreme Court held that:

> in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983.

<u>Id.</u> at 486-87 (footnote omitted; emphasis in original). Thus, to determine whether the bar applies, the district court must consider whether a judgment for the plaintiff in the § 1983 action would necessarily imply the invalidity of the plaintiff's conviction or sentence. <u>Id.</u> at 487. If so, the court must dismiss the claim or claims unless the plaintiff can show the conviction or sentence has been invalidated. <u>Id.</u> In the Third Circuit, district courts must conduct a fact-based inquiry to determine whether a claim "necessarily implies" the invalidity of the underlying conviction. <u>Gibson v. Superintendent, N.J. Dep't of Law and Public Safety</u>, 411 F.3d 427, 450 (3d Cir. 2005) <u>overruled on other grounds by</u> <u>Dique v. New Jersey State Police</u>, 603 F.3d 181, 188 (3d Cir. 2010).

The court notes that the averments in Count I, the false imprisonment claim appear to concern only the 2001 burglary conviction, the averments in Count II, the malicious abuse of process claim concern only the 2006 aggravated assault conviction, and the averments in Count III, the intentional infliction of emotional distress claim involve both convictions. (<u>See</u> Doc. 1 ¶¶ 46-60). Thus, the question with respect to the <u>Heck</u> doctrine is whether a judgment in Brown's favor on the §

16

1983 malicious abuse of process claim necessarily imply the invalidity of his 2006 conviction.

The court finds that a judgment in favor of Brown on the malicious abuse of process count will not necessarily imply the invalidity of Brown's 2006 conviction. A malicious abuse of process claim brought pursuant to § 1983 "lies where 'prosecution is initiated legitimately and thereafter is used for a purpose other than that intended by the law.'" Napier v. City of New Castle, 407 Fed. App'x 578, 582 (3d Cir. 2010) (citations omitted).  Under Pennsylvania law, a plaintiff asserting an abuse of process claim must establish that "the defendant (1) used a legal process against the plaintiff, (2) primarily to accomplish a purpose for which the process was not designed; and (3) harm has been caused to the plaintiff." Rosen v. Am. Bank of Rolla, 627 A.2d 190, 192 (1993).  Neither of these claims, if successful, would *necessarily* imply the invalidity of Brown's 2006 aggravated assault conviction.[4] Thus, Heck does not bar the claim, and Chardo's motion to dismiss on this ground will be denied.

---

[4] The court also rejects Chardo's alternative assertion that the Younger abstention doctrine bars Brown's claims in Count II of the complaint.  Pursuant to Younger v. Harris, 401 U.S. 37 (1971), federal courts must abstain from exercising jurisdiction over claims "when (1) there are ongoing state proceedings that are judicial in nature; (2) the state proceedings implicate important state interests; and (3) the state proceedings afford an adequate opportunity to raise federal claims." Miller v. Mitchell, 598 F.3d 139, 146 (3d Cir. 2010).  Brown avers that his *pro se* PCRA petition with respect to the 2006 conviction has been denied, (see Doc. 13, at 11), thereby rendering the Younger abstention doctrine inapplicable.

### C.    **Malicious Abuse of Process Claim**

Alternatively, Chardo contends that Brown fails to state a cognizable state or federal claim for malicious abuse of process.  An abuse of process claim involves the perversion of the legal process after process has been initiated to accomplish a purpose for which the process was not designed.  See Shiner v. Moriarty, 706 A.2d 1228, 1236 (Pa. Super. Ct. 1998); Gen. Refractories Co. v. Fireman's Fund Ins. Co., 337 F.3d 297, 304 (3d Cir. 2003); Marable v. West Pottsgrove Tp., 176 Fed. App'x 275, 281-82 (3d Cir. 2006).  As discussed above, a malicious abuse of process claim brought pursuant to § 1983 "lies where 'prosecution is initiated legitimately and thereafter is used for a purpose other than that intended by the law.'" Napier v. City of New Castle, 407 Fed. App'x 578, 582 (3d Cir. 2010) (citations omitted).  Under Pennsylvania law, an abuse of process claim lies where "the defendant (1) used a legal process against the plaintiff, (2) primarily to accomplish a purpose for which the process was not designed; and (3) harm has been caused to the plaintiff."  Rosen v. Am. Bank of Rolla, 627 A.2d 190, 192 (1993).  Thus, to prevail, a plaintiff must prove "some definite act or threat not authorized by the process, or aimed at an objective not legitimate in the use of the process."  Id. (internal citations and quotations omitted).  When the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions, the defendant is not liable.  Napier, 407 Fed. App'x at 582.

In Count II of the complaint Brown alleges that Chardo improperly used his discretion to charge Brown with aggravated assault in order to ensure Brown's

18

continued incarceration and to cover up or limit potential damages resulting from the discovery of the DNA evidence.  (Doc. 1 ¶¶ 53-54).  Brown avers that Chardo used the legal process to coerce a plea upon information Chardo knew to be no longer valid.  (Id. ¶ 55).  Chardo reads these averments as referring to the 2006 prosecution on the aggravated assault charges, and argues that he carried out the process to its authorized conclusion rendering his motives irrelevant.  (See Doc. 11, at 23).  However, in response to Chardo's motion to dismiss Count II, Brown discusses the 2001 robbery conviction as the process legitimately initiated and thereafter perverted.  (Doc. 13, at 12).

To the extent Brown asserts a claim for malicious abuse of process for the 2006 conviction, the court finds that Brown fails to state a claim.  Chardo initiated charges, engaged in plea negotiations with Brown and Brown pled guilty.  Chardo carried out the process to its authorized conclusion.  Averments that Chardo improperly used his discretion to initiate aggravated assault charges do not establish an abuse of process, as they concern the illegitimate initiation of charges, whereas an abuse of process claim involves a *legitimately initiated* prosecution thereafter used for an improper purpose.  See Napier, 407 Fed. App'x at 582.

To the extent Brown is attempting to assert a claim for malicious prosecution stemming from the 2001 conviction, the court finds that the complaint fails to sufficiently set forth averments to state a claim.  All the averments of Count II refer to the 2006 conviction.  (See Doc. 1 ¶¶ 52-56).  Therefore, the court will grant Chardo's motion to dismiss Count II for failure to state a claim.  The court will grant

Brown leave to file an amended complaint with respect to Count II, subject to the limitation discussed in Part III.E infra.  See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000).

### D. **Damages under the Pennsylvania Constitution**

Chardo next asserts that Brown fails to state a cognizable claim for money damages for violations of the Pennsylvania Constitution because neither statute nor case law authorizes an award of money damages.  Brown counters that the Pennsylvania Supreme Court has not addressed the issue of the availability of money damages for violations of the Pennsylvania Constitution and asserts that the Pennsylvania and federal court cases indicating there is no private cause of action relate to different constitutional provisions, not the one applicable here: Article I, Section 11.

The Pennsylvania Supreme Court has yet to decide the issue, however, the Pennsylvania Commonwealth Court does not recognize a private right of action for money damages for violations of the Pennsylvania Constitution.  See R.H.S. v. Allegheny Cnty. Dept. of Human Servs., 936 A.2d 1218, 1226 (Pa. Commw. Ct. 2007) (stating that 'neither statutory authority, nor appellate case law has authorized the award of monetary damages for a violation of the Pennsylvania Constitution' (quoting Jones v. City of Phila., 890 A.2d 1188, 1208 (Pa. Commw. Ct. 2006))). Similarly, the federal courts in this circuit have conclude no such right exists under the Pennsylvania Constitution.  See Ryan v. Gen. Mach. Prods., 277 F. Supp. 2d 585, 595 (E.D. Pa. 2003); see also Becker v. Godboldte, 2011 WL 2015213, at *10 (M.D. Pa.

May 24, 2011).  None of these cases indicate that there is an exception for violations of the provision referenced by Brown, and Brown cites no authority to support his position that Article I, Section 11 is somehow different or exempted.  Therefore, Brown's claims for money damages for violations of the Pennsylvania Constitution will be dismissed.

### E.   High Public Official Immunity

Finally, Chardo contends that Brown's state law claims are barred by the application of the immunity afforded to high public officials under Pennsylvania law.  Brown counters that Chardo is not entitled to high public official immunity because his position does not qualify him as a high public official and his conduct was not in the "good faith" performance of his job.

High public official immunity under Pennsylvania common law protects high public officials from suits for damages for actions taken or statements made in the course of their official duties.  Durham v. McElynn, 772 A.2d 68, 69 (Pa. 2001); Matson v. Margiotti, 88 A.2d 892, 895 (1952).  The immunity goes so far as to cover statements or actions motivated by malice when they are made or taken within the scope of the official's duties or authority.  Matson, 88 A.2d at 895.[5]  Pennsylvania courts have extended immunity for high public officials to district attorneys and assistant district attorneys.  McCormick v. Specter, 275 A.2d 688 (Pa. Super. Ct.

---

[5]  The doctrine of high public official immunity existed prior to Pennsylvania's enactment of the Political Subdivision Tort Claims Act, 42 Pa. Cons. Stat. § 8541 *et seq.*, and was not abrogated by it.  See Durham, 772 A.2d at 69 (citing Lindler v. Mollan, 677 A.2d 1194, 1196 (Pa. 1996)).

1971); see also Durham, 772 A.2d at 70.  Unlike the absolute prosecutorial immunity discussed supra, Pennsylvania high public official immunity does not distinguish among prosecutorial, advocative, investigative or administrative conduct by the assistant district attorney.  High public immunity applies to all conduct and statements within the course of the official's duties.  Matson, 88 A.2d at 895.

Brown contends that Chardo, despite his title as chief deputy district attorney, is not entitled to high public official immunity because Chardo has no legislative or policy making powers and was not elected and therefore not accountable to the voting public.  (Doc. 13, at 15).  However, the Pennsylvania Supreme Court extended high public immunity to assistant district attorneys in Durham v. McElynn, despite the fact that the assistant district attorneys served at the will of their employer and were not policy-making officials.  Durham, 772 A.2d at 70. As the Durham court explained:

> The fact that assistant district attorneys, unlike their principal, the district attorney, are not known for policy-making functions is not pivotal to the immunity determination. . . . [T]he "high public official" umbrella of immunity has in many instances been extended to a wide range of public officials whose policy-making roles were not salient. While it is often the case that "high public officials" have policy-making functions, that is not the sole overriding factor in determining the scope of immunity.  Rather, it is the public interest in seeing that the official not be impeded in the performance of important duties that is pivotal.  That interest dictates that assistant district attorneys be immune from suit.

Id.  Moreover, federal judges in this district have extended high public official immunity to assistant district attorneys, including Chardo, in other cases.  See Njie

v. Livingston, Civ. No. 3:CV-08-2263, 2010 WL 569551, at *6 (M.D. Pa. Feb. 9, 2010)

(citing Jaslar v. Zavada, No. 3:CV-05-2080, 2009 WL 82553 (M.D. Pa. Jan. 12, 2009)).

In the instant matter, in purportedly failing to provide the DNA report to Brown during the pendency of Brown's PCRA petition proceedings and in conducting plea negotiations on the assault charges, Chardo was acting within the course and scope of his duties as assistant district attorney. Chardo is therefore entitled to high public official immunity on all of Brown's state law claims, regardless of whether his actions were in good faith or alternatively motivated by malice. See Matson, 88 A.2d at 895. The court will therefore grant Chardo's motion to dismiss with respect to the state law claims.

**IV.   <u>Conclusion</u>**

For the above-stated reasons, the court will grant the motion to dismiss in part and deny the motion in part. An appropriate order follows.

  S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge

Dated:        March 22, 2012

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **PATRICK BROWN,** | : | **CIVIL ACTION NO. 1:11-CV-0638** |
| | : | |
| **Plaintiff,** | : | **(Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **FRANCIS CHARDO,** | : | |
| | : | |
| **Defendant** | : | |

## <u>ORDER</u>

AND NOW, this 22nd day of March, 2012, upon consideration of the motion

(Doc. 10) to dismiss, filed by Francis Chardo, and for the reasons set forth in the

accompanying memorandum, it is hereby ORDERED that:

1. The motion to dismiss is GRANTED in part and DENIED in part as follows:

   a. The motion is GRANTED with respect to Count II, all claims for money damages under the Pennsylvania Constitution, and the state law claims of false imprisonment, malicious abuse of process and intentional infliction of emotional distress.

   b. The motion is DENIED in all other respects.

2. Plaintiff is GRANTED leave to file, within twenty (20) days of this order, an amended complaint with respect to Count II.

3. A revised pretrial and trial schedule shall issue by future order of the court.

   S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge