# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **PATRICK BROWN**, | : | CIVIL ACTION NO. 1:11-CV-0638 |
| Plaintiff, | : | (Judge Conner) |
| v. | : | |
| **FRANCIS CHARDO**, | : | |
| Defendant | : | |

## MEMORANDUM

This is a civil rights action filed by plaintiff Patrick Brown ("Brown") against defendant Francis Chardo ("Chardo"). Brown alleges that Chardo, a Dauphin County Chief Assistant District Attorney, violated his constitutional rights by failing to disclose the results of a DNA report during Brown's post conviction relief proceedings on a burglary conviction. Presently before the court is Chardo's motion (Doc. 42) for summary judgment. For the reasons that follow, the court will grant his motion.

## I.     Factual Background[1]

In 2001, Brown was convicted in the Court of Common Pleas of Dauphin County of burglary, criminal conspiracy, robbery, and persons not to possess firearms. (Doc. 43 ¶ 3; Doc. 47 ¶ 3). The court sentenced Brown to 22 to 70 years incarceration. (Id.) Chardo did not represent the Commonwealth at trial because

---

[1] In accordance with the standard of review for a motion for summary judgment, the court will present the facts in the light most favorable to Brown, the nonmoving party. See infra Part III.

he was on a temporary assignment as a Special Assistant District Attorney in York County. (Doc. 43 ¶¶ 4, 5; Doc. 47 ¶¶ 4, 5). At the time of trial, the jury knew that DNA recovered from a bandana allegedly worn by Brown during the crime was not Brown's DNA. (Doc. 43 ¶¶ 6-8; Doc. 47 ¶¶ 6-8). The jury also knew that there were two people involved in the crime. (Doc. 43 ¶ 15; Doc. 47 ¶ 15). At trial, Brown's defense centered on the fact that his DNA was not on the bandana. (Doc. 43 ¶ 7; Doc. 47 ¶ 7). Nevertheless, the jury convicted Brown on the strength of the victim's eyewitness testimony identifying Brown as one of the perpetrators. (Doc. 43 ¶ 18; Doc. 47 ¶ 18).

At some point after trial but before 2006, Brown filed a *pro se* Post Conviction Relief Act ("PCRA") Petition. (Doc. 43 ¶ 19; Doc. 47 ¶ 19). Chardo represented the Commonwealth in those proceedings. (Id.) Chardo filed a brief in opposition to the PCRA petition on October 3, 2005. (Doc. 47 ¶ 19; Doc. 49, at 8). The next day, the court issued a notice of intent to dismiss the action, but did not actually dismiss the action until February 15, 2007. (Id.)

In early June 2006, Chardo received a preliminary DNA analysis report that matched the DNA recovered from the bandana to another individual: Robert Rickard ("Rickard"). (Doc. 43 ¶¶ 19, 26, 27; Doc. 47 ¶¶ 19, 26, 27). Chardo knew that the statute of limitations for charging Rickard for the crime had already expired. (Doc. 43 ¶ 25; Doc. 47 ¶ 25). Regardless, Chardo requested Detective Regis Vogel to interview Rickard on July 19, 2006. (Doc. 43 ¶ 22; Doc. 47 ¶ 22). Rickard denied any

2

involvement in the robbery. (Doc. 43 ¶ 24; Doc. 47 ¶ 24). Detective Vogel prepared an investigative report summarizing his findings. (Doc. 43 ¶ 23; Doc. 47 ¶ 23).

The District Attorney's Office was undergoing renovations when Chardo received the DNA analysis report. (Doc. 43 ¶ 28; Doc. 47 ¶ 28). At the time, the District Attorney's Office was operating out of a temporary office in a building across the street from their second floor office in the courthouse. (Doc. 43 ¶ 29; Doc. 47 ¶ 29). During June and July 2006, the district attorneys would put outgoing mail into a mail bin in the temporary office. (Doc. 43 ¶ 40; Doc. 47 ¶ 40). The outgoing mail placed in the bin would be taken across the street to the courthouse to be processed and mailed. (Id.)

Chardo claims that he intended to disclose the DNA analysis and the investigative report to Brown because the reports related to his pending PCRA petition,[2] but cannot recall whether he actually mailed the reports. (Doc. 43 ¶¶ 35-37, 44; Doc. 47 ¶¶ 35-37, 44). Chardo indicated to Detective Vogel that he intended to disclose the reports to Brown. (Doc. 43 ¶ 45; Doc. 47 ¶ 45). Chardo admitted that it was his ethical obligation, as well as his legal obligation as the prosecutor in the PCRA proceeding, to disclose the reports. (Doc. 43 ¶¶ 20, 21; Doc. 47 ¶¶ 20, 21).

The District Attorney's Office classified Brown's case file as "closed" because he had already been sentenced. (Doc. 43 ¶¶ 33, 34; Doc. 47 ¶¶ 33, 34). "Closed" files remained in the courthouse during the renovation and were inaccessible. (Doc. 43

---

[2] Brown disputes that Chardo actually intended to mail the reports. (Doc. 47 ¶ 44).

3

¶ 30; Doc. 47 ¶ 30). During the renovation, the entire District Attorney's Office utilized a filing bin/tray in the temporary office for documents regarding closed cases. (Doc. 43 ¶ 32; Doc. 47 ¶ 32). The general expectation was that anything filed in the bin/tray would be placed in the corresponding closed case file once the District Attorney's Office moved back into the courthouse. (Doc. 43 ¶ 31; Doc. 47 ¶ 31).[3]

In 2009 or 2010, Brown, with the assistance of counsel, filed another PCRA petition pursuant to 42 Pa.C.S.A. § 9545(b)(1)(ii) based on other newly discovered exculpatory evidence implicating Rickard. (Doc. 43 ¶ 10; Doc. 47 ¶ 10). Brown subsequently filed a motion seeking DNA testing of Rickard. (Doc. 43 ¶ 11; Doc. 47 ¶ 11). Thereafter, Chardo made a CODIS[4] request for Rickard's profile. (Doc. 43 ¶ 12; Doc. 47 ¶ 12). In response, the lab sent Chardo a copy of the June 2006 preliminary DNA analysis report. (Doc. 43 ¶ 13; Doc. 47 ¶ 13). Chardo advised Brown's counsel of this development and Brown filed a timely amended PCRA petition. (Doc. 43 ¶¶ 12, 51; Doc. 47 ¶¶ 12, 51). After a PCRA hearing in June, 2010, the court granted Brown a new trial and *nolle prossed* the charges against him. (Doc. 43 ¶¶ 52, 53; Doc. 47 ¶¶ 52, 53).

---

[3] Brown denies that there was any such expectation, but does not cite to any record evidence to establish a genuine dispute of material fact. See FED. R. CIV. P. 56(c)(1) (requiring the non-movant to establish a genuine dispute of material fact by either "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute.").

[4] CODIS stands for Combined DNA Index System.

4

## II. **Procedural History**

On April 6, 2011, Brown filed the instant civil rights action, alleging that Chardo violated his constitutional rights by failing to timely disclose the report in 2006. (Doc. 1). On June 13, 2011, Chardo filed a motion to dismiss the complaint. (Doc. 10). Chardo asserted, among other grounds, that the suit must be dismissed in its entirety because he is entitled to absolute prosecutorial immunity. (Id. ¶ 21). The court did not determine Chardo's claim to absolute immunity at that time, reasoning that "there is simply insufficient information at this stage to determine whether Chardo's conduct was prosecutorial, advocative, investigative, or administrative." (Doc. 23, at 14). The court encouraged Chardo to re-assert this argument on summary judgment when the court would have the benefit of a full evidentiary record. (Id. at 15). On other grounds, the court effectively whittled down the lawsuit to only include Brown's claim of false imprisonment under the Fourth and Fourteenth Amendments of the United States Constitution.

On December 19, 2012, Chardo filed the instant motion for summary judgment. (Doc. 42). In addition to alleging his entitlement to absolute immunity, Chardo asserts that summary judgment is appropriate on substantive grounds because Brown did not have a right to access the CODIS report and the report was not exculpatory or material to his case. (Doc. 44, at 3). In the alternative, Chardo claims he is entitled to qualified immunity. (Id.) The motion is fully briefed and ripe for disposition.

## III. Standard of Review

Through summary adjudication, the court may dispose of those claims that do not present a "genuine dispute as to any material fact" and for which a jury trial would be an empty and unnecessary formality. See FED. R. CIV. P. 56(a). The burden of proof is upon the non-moving party to come forth with "affirmative evidence, beyond the allegations of the pleadings," in support of its right to relief. Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). This evidence must be adequate, as a matter of law, to sustain a judgment in favor of the non-moving party on the claims. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-57 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-89 (1986). Only if this threshold is met may the cause of action proceed. Pappas, 331 F. Supp. 2d at 315.

## IV. Discussion

The court begins its analysis with Chardo's assertion of absolute prosecutorial immunity. "A prosecutor bears the 'heavy burden' of establishing entitlement to absolute immunity." Odd v. Malone, 538 F.3d 202, 207 (3d Cir. 2008) (citing Light v. Haws, 472 F.3d 74, 80-81 (3d Cir. 2007) (quoting Forsyth v. Kleindienst, 599 F.2d 1203, 1212 (3d Cir. 1979))); see also Burns v. Reed, 500 U.S. 478, 486 (1991). The Third Circuit instructs the court to start with the presumption that qualified, not absolute, immunity is appropriate. Odd, 538 F.3d at 207-08.

Chardo's status as a prosecutor does not *ex proprio vigore* entitle him to prosecutorial immunity. The court must focus upon the nature of the function

6

performed by the prosecutor, not the identity of the actor.  See Kalina v. Fletcher, 522 U.S. 118, 127 (1997).  A prosecutor is entitled to absolute immunity when he is functioning as the state's advocate in performing the questioned actions.  Yarris v. County of Delaware, 465 F.3d 129, 136 (3d Cir. 2006).  That is, prosecutors are absolutely immune for actions performed in a judicial or quasi-judicial role.  Odd, 538 F.3d at 208; Yarris, 465 F.3d at 135; Imbler v. Pachtman, 424 U.S. 409, 430-31 (1976).  Prosecutorial immunity extends to "acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State."  Buckley v. Fitzsimmons, 509 U.S. 259, 273 (1993).  Allegations that the prosecutor acted willfully or in bad faith, knowing his conduct to be unauthorized, will not strip the prosecutor of absolute immunity unless a reasonable prosecutor would recognize the conduct as "clearly outside his jurisdiction" in representing the state.  See Ernst v. Child & Youth Servs. of Chester Cnty., 108 F.3d 486, 502 (3d Cir. 1997) (stating that subjective state of mind is irrelevant to absolute immunity and allegations of bad faith will not strip a prosecutor of absolute immunity) (quoting Bauers v. Heisel, 361 F.2d 581, 591 (3d Cir. 1966)); Imbler, 424 U.S. at 427 (admitting that prosecutorial immunity leaves wronged defendant without civil remedy for a prosecutor's "malicious or dishonest" acts).

Absolute immunity does not cover administrative duties or investigatory functions of the prosecutor not related to initiating or conducting judicial proceedings.  See Odd, 538 F.3d at 208.  When the behavior of the prosecutor "falls

completely outside the prosecutorial role," for example, a prosecutor's deliberate destruction of exculpatory evidence, absolute immunity is unavailable. Giuffre v. Bissell, 31 F.3d 1241, 1251 (3d Cir. 1994) (quoting Kulwicki v. Dawson, 969 F.2d 1454, 1463 (3d Cir. 1992)); Odd, 538 F.3d at 211; Yarris, 465 F.3d at 137 (stating that "while deciding not to furnish the prosecution's evidence to the defense may be an act of advocacy, throwing the evidence away is not such an act") (internal citations and quotations omitted).

The court's task in determining whether Chardo is entitled to absolute immunity is twofold: first, the court must determine exactly what conduct forms the basis of Brown's cause of action against Chardo, and thereafter the court must determine what function Chardo's conduct served, *i.e.*, prosecutorial, advocative, investigative, or administrative. Schneyder v. Smith, 653 F.3d 313, 332 (3d Cir. 2011). If the conduct was advocative or prosecutorial, Chardo is entitled to absolute immunity. If the conduct was administrative or investigative, Chardo is not immune from suit. The prosecutorial immunity inquiry is principally fact-based and there are no bright line rules for when absolute immunity applies. See Odd, 538 F.3d at 210 ("Following the Supreme Court's guidance, our prosecutorial immunity analysis focuses on the unique facts of each case and requires careful dissection of the prosecutor's actions.").

### A. **The Conduct**

Brown's remaining cause of action is for false imprisonment under 28 U.S.C. § 1983. Section 1983 claims for false imprisonment are "based on the Fourteenth
8

Amendment protection against deprivations of liberty without due process of law." Groman v. Twp. of Manalapan, 47 F.3d 628, 636 (3d Cir. 1995). Section 1983 "creates a species of tort liability" which is governed by the applicable tort's elements under the common law. Heck v. Humphrey, 512 U.S. 477, 483 (1994). Under the common law, false imprisonment consists of "arrest or restraint without adequate legal justification." Forgione v. United States, 202 F.2d 249, 252 (3d Cir. 1953).

Brown claims that after Chardo learned of the 2006 preliminary DNA analysis report, Chardo knew that Brown's continued incarceration was unlawful but failed to remedy the situation, which resulted in Brown's false imprisonment. As a threshold matter, Brown alleges that none of Chardo's actions during this time may be immunized because Chardo was not actively prosecuting Brown's case. Brown also identifies the following conduct of Chardo as subject to the false imprisonment claim: 1) failing to preserve the report or having it deliberately destroyed; 2) failing to bring the report to the attention of Brown and the PCRA court; and 3) failing to further investigate Rickard or take reasonable steps to secure Brown's release from prison after receipt of the report.[5] (Doc. 1 ¶¶ 46-51;

---

[5] Brown also discusses how Chardo is not entitled to immunity for his actions of receiving and reviewing the preliminary DNA analysis report or instructing Detective Vogel to interview Rickard. (Doc. 46 at 3-4). Brown's arguments on these grounds are unavailing and irrelevant: Brown's lawsuit does not question Chardo's actions in receiving and reviewing the report or in ordering an interview; rather, the lawsuit puts in issue Chardo's actions *after* receiving the DNA analysis report and ordering the interview. Those are the actions which the court must analyze to determine Chardo's entitlement to absolute immunity.

Doc. 46 at 4-13). The court will examine whether Chardo was actively prosecuting Brown's case in the summer of 2006. The court will also analyze the purpose or function of each instance of Chardo's questioned conduct to determine whether Chardo is entitled to absolute immunity.

### B. **The Function of the Conduct**

#### 1. Active Prosecution

Brown first claims that Chardo was not actively prosecuting Brown's case when Chardo first received the preliminary DNA analysis report in June, 2006. Brown states that Chardo was instead acting in his administrative capacity as custodian of the case file. (Doc. 46 at 1-2).

It is clearly established that absolute immunity may apply to a prosecutor's actions during post-conviction proceedings. See Yarris, 465 F.3d at 137 ("Absolute immunity applies to the adversarial acts of prosecutors during post-conviction proceedings . . . where the prosecutor is personally involved . . . and continues his role as an advocate."); Washam v. Stesis, 321 Fed. App'x 104, 106 & n.1 (3d Cir. 2009) (affirming dismissal of § 1983 action against prosecutor on basis that prosecutor had absolute immunity for performance of typical prosecutorial functions and activities, and noting that prosecutor named as defendant represented Commonwealth in plaintiff's PCRA proceedings); see also Wallace v. Green, Civ. A. No. 08-CV-3239, 2010 WL 1303446, at *6 (E.D. Pa. Mar. 31, 2010) (granting summary judgment on grounds of prosecutorial immunity to prosecutor who opposed, on behalf of the Commonwealth, plaintiff's PCRA petition).

Brown does not dispute that Chardo was still the designated representative of the Commonwealth for the PCRA proceedings in June 2006 even though Brown's petition was pending dismissal. (Doc. 43 ¶ 19; Doc. 47 ¶ 19). The fact that Brown's case file was deemed "closed" and was inaccessible at the time is irrelevant: Brown does not dispute that the District Attorney's Office classifies all cases as "closed" once a defendant has been sentenced. (Doc. 43 ¶¶ 33, 34; Doc. 47 ¶¶ 33, 34). Representing the Commonwealth in Brown's PCRA proceedings may not have required a significant amount of prosecutorial or advocative conduct on behalf of Chardo by June 2006, but that does not mean it did not require any. Chardo was still obligated to act appropriately as an advocate for the Commonwealth if any issues potentially implicating the viability of Brown's PCRA petition arose when it was pending dismissal. Chardo's conduct in June of 2006 is shielded by absolute immunity to the extent it falls within the ambit of his prosecutorial or advocative functions.

### 2. Failure to Preserve or Deliberate Destruction

Brown alleges that Chardo is not subject to absolute prosecutorial immunity because he failed to preserve the report or constructively destroyed it. It is correct that the duty to preserve evidence is inherently custodial and administrative in nature. Henderson v. Fisher, 631 F.2d 1115, 1120 (3d Cir. 1980). The deliberate destruction of evidence is also not subject to absolute immunity. Yarris, 465 F.3d 129, 136 (3d Cir. 2006); Wilkinson v. Ellis, 484 F. Supp. 1072, 1083 (E.D. Pa. 1980). However, the allegation that Chardo failed to preserve or destroyed the report is not

11

the conduct at issue as alleged in the complaint. (See Doc. 1 ¶¶ 46-51). Nor could it be: Brown's alleged harm was not proximately caused by any alleged destruction or non-preservation of the report but rather by Chardo's alleged failure to timely disclose the contents of the report. Indeed, the report was never actually destroyed, as evidenced by Chardo's disclosure several years later. (Doc. 43 ¶ 13; Doc. 47 ¶ 13).

### 3. Withholding Exculpatory Evidence

Brown's false imprisonment claim is primarily based on Chardo's act of withholding exculpatory evidence. Brown argues that Chardo did not make any affirmative decision, deliberate or negligent, to withhold the evidence, and is therefore not subject to absolute immunity. (Doc. 46 at 7-8). There is abundant case law indicating that prosecutors are entitled to absolute immunity for the deliberate withholding of exculpatory evidence. See Yarris, 465 F.3d at 137 ("It is well settled that prosecutors are entitled to absolute immunity from claims based on their failure to disclose exculpatory evidence, so long as they did so while functioning in their prosecutorial capacity."); see also Imbler, 424 U.S. at 431 n.34 (explaining that the "deliberate withholding of exculpatory information" is included within the "legitimate exercise of prosecutorial discretion"); Smith v. Holtz, 210 F.3d 186, 199 n. 18 (3d Cir. 2000) (prosecutor who made decision to withhold exculpatory evidence has absolute immunity in § 1983 action so long as decision made while functioning in his prosecutorial capacity); Douris v. Schweiker, 229 F. Supp. 2d 391, 411 (E.D. Pa. 2002) (stating that "withholding exculpatory evidence is a quasi-judicial act protected by absolute immunity"). Prosecutorial immunity

12

applies in this circumstance even if the prosecutor acted maliciously or in bad faith. See Imbler, 424 U.S. at 427, 428 n. 27; Ernst, 108 F.3d at 502; Kulwicki, 969 F.2d at 1465.

The parties have not presented any cases, and the court has been unable to find any cases, discussing the application of absolute prosecutorial immunity to an inadvertent or accidental withholding of exculpatory evidence. Clearly, however, it would be incongruous and illogical to grant absolute immunity when a prosecutor intentionally or maliciously withholds exculpatory evidence, yet deny absolute immunity when a prosecutor mistakenly or negligently withholds exculpatory evidence. The court's immunity inquiry must focus upon the nature of the prosecutor's conduct, not the subjective state of mind behind that conduct.[6] Ernst, 108 F.3d at 502 ("If absolute immunity is to serve its purpose, the line between official conduct, as to which there is immunity, and extra-official conduct, as to which there is not, must be drawn without reference to the official's subjective state of mind."). It is a close question, but the court finds that granting immunity for an

---

[6] On the issue of Chardo's conduct, Brown seeks to have it both ways. On one hand, Brown argues that Chardo did not make any affirmative decision to withhold the evidence. (Doc. 46 at 7-8). On the other hand, Brown disputes that Chardo's conduct was at most negligent, and concedes that mere negligence on behalf of Chardo would be insufficient to establish a false imprisonment claim under § 1983. (Id. at 8, 8 n.3). Instead, Brown argues that Chardo acted "intentionally, deliberately, willfully, or with gross negligence," thus implying that Chardo made an affirmative decision to withhold the evidence. (Id. at 8). This argument invites precisely the type of subjective, state of mind analysis that the court must assiduously avoid.

accidental or mistaken withholding is a logical derivation of the well-established rule granting immunity for deliberate withholdings.

The court's conclusion is undergirded by the fact that, assuming Chardo did not make an *affirmative decision* to withhold the evidence, his conduct and the result of that conduct was the same as if he had. The parties do not dispute that Chardo had an obligation to produce the preliminary DNA analysis report *because* he was the attorney for the Commonwealth in Brown's PCRA proceeding. (Doc. 43 ¶¶ 20, 21; Doc. 47 ¶¶ 20, 21). Moreover, Chardo requested Detective Vogel to interview Rickard after receiving the report only because Rickard could potentially provide information relating to Brown's conviction and subsequent PCRA petition. This is evidenced by the fact Chardo knew the statute of limitations to charge Rickard for the crime had expired. (Doc. 43 ¶ 25; Doc. 47 ¶ 25). Importantly, the parties agree that if the DNA analysis report had been disclosed to the PCRA court prior to the petition's dismissal, Brown probably would have been permitted to amend his pending petition with the new evidence. (Doc. 49 at 8; Doc. 50 at 10). Chardo's withholding may be better characterized as an omission as opposed to an

affirmative act, but that does not make his conduct any less entitled to absolute immunity.[7]

### 4. Failure to Conduct Further Investigation or Seek Release

Brown's claim also criticizes Chardo's failure to investigate further Rickard's role in the offense or to seek Brown's release from prison. (See Doc. 1 ¶¶ 48, 49; Doc. 46 at 9-10). Investigatory activity conducted in connection with an existing prosecution is protected by absolute immunity. See, e.g., Kulwicki, 969 F.2d at 1465 ("Evidence obtained at or after the filing [of a criminal complaint] is likely to be connected with an existing prosecution, and is absolutely protected."). A prosecutor's failure to adequately investigate a defendant's claims in a specific criminal case is similarly protected. See, e.g., McDonald v. Illinois, 557 F.2d 596, 602 (7th Cir. 1977) (holding that two prosecutors were entitled to absolute immunity for failing to adequately investigate the plaintiff's version of events surrounding a crime for which the plaintiff was convicted and later pardoned). In addition, a prosecutor's determination about whether to seek a convicted prisoner's release is part and parcel of a prosecutor's advocative role. See, e.g., Peterson v. Bernardi, 719 F. Supp. 2d 419, 436-37 (D.N.J. 2010) (holding that a prosecutor's decision

---

[7] Relatedly, Brown asserts that Chardo is not entitled to absolute immunity because his conduct could be considered criminal under 16 P.S. § 1405. Brown cites Wilkens v. Marsico, 903 A.2d 1281 (Pa. Super Ct. 2006), but this case does not stand for the proposition that a prosecutor is divested of absolute prosecutorial immunity in a civil suit whenever his or her actions arguably fall under the purview of a criminal statute. The court is unable to find any legal support for this assertion whatsoever.

15

concerning whether to consent to the dismissal of a murder conviction was protected by absolute immunity). Chardo's alleged failure to adequately investigate Rickard's role in the offense or to seek Brown's release from prison is clearly protected by absolute immunity.[8]

Brown also makes a number of arguments concerning Chardo's actions after receiving the report that are simply not relevant to the court's immunity analysis and are, at best, tangentially relevant to Brown's underlying false imprisonment claim. For example, Brown cites Chardo's silence regarding the report in August of 2006 when speaking to Brown and also when speaking to a reporter. (Doc. 46 at 9-11, 13-14). Brown also discusses a former state case, Commonwealth v. Crawford, which also involved Chardo's failure to disclose exculpatory evidence.[9] (Id. at 12-

---

[8] Although not pertinent to the immunity issue, it is important to note that the preliminary DNA analysis report did not in and of itself establish Brown's innocence. When Brown was convicted in 2001, the jury was well aware that the DNA on the bandana found at the crime scene did not match Brown. (Doc. 43, ¶¶ 6-8; Doc. 47 ¶¶ 6-8). The jury simply did not know the source of the DNA. The jury convicted Brown, despite knowing that the DNA on the bandana was not Brown's, on the strength of the victim's eye witness testimony identifying Brown as one of the culprits. (Doc. 43 ¶ 18; Doc. 47 ¶ 18). The jury also knew there were two perpetrators of the crime. (Doc. 43 ¶ 15; Doc. 47 ¶ 15). The 2006 DNA report identified the source of DNA on the bandana but did not rule out Brown as one of the suspects of the crime. Brown's assertion that Chardo knowingly kept an innocent man behind bars by withholding the DNA report is inaccurate. The 2006 report simply identified the previously unidentified source of the DNA on the bandana as Rickard.

[9] The court notes that evidence of prior bad acts is not admissible at trial to prove action in conformity therewith. See FED. R. EVID. 404(b).

16

13). To the extent that Brown is using these facts to establish that Chardo's behavior fell completely outside his prosecutorial role, the court remains skeptical.

In sum, Chardo is absolutely immune from suit for Brown's claim of false imprisonment under the Fourth and Fourteenth Amendments. In light of this determination, it is not necessary for the court to address Chardo's substantive arguments concerning summary judgment or his entitlement to qualified immunity. The court recognizes that the grant of absolute prosecutorial immunity in this instance leaves Brown without a civil remedy. See Imbler, 424 U.S. at 427. As the Supreme Court said in Imbler, "As is so often the case, the answer must be found in a balance between the evils inevitable in either alternative. In this instance it has been thought in the end better to leave unredressed the wrongs done by dishonest officers than to subject those who try to do their duty to the constant dread of retaliation." Imbler, 409 U.S. at 428 (quoting Gregoire v. Biddle, 177 F.2d 579, 581 (2d Cir. 1949). Chardo may have had an obligation to disclose the evidence sooner, but under the law, his conduct is entitled to absolute prosecutorial immunity. The motion for summary judgment will therefore be granted.

## V.     **Conclusion**

For the above-stated reasons, the court will grant Chardo's motion (Doc. 42) for summary judgment. An appropriate order follows.

    S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge

Dated:     August 13, 2013

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **PATRICK BROWN**, | : | CIVIL ACTION NO. 1:11-CV-0638 |
| **Plaintiff,** | : | (Judge Conner) |
| v. | : | |
| **FRANCIS CHARDO**, | : | |
| **Defendant** | : | |

## ORDER

AND NOW, this 13th day of August, 2013, upon consideration of the defendant's motion (Doc. 42) for summary judgment, and for the reasons set forth in the accompanying memorandum, it is hereby ORDERED that:

1. Defendant's motion (Doc. 42) for summary judgment is GRANTED.

2. The Clerk of the Court is directed to CLOSE this case.

                                            S/ Christopher C. Conner
                                            CHRISTOPHER C. CONNER
                                            United States District Judge